UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTONIO PAIGNE,

        Petitioner,

        v.

KRISTI NOEM, TODD LYONS, SAM
OLSON, PAMELA BONDI, and BRIAN
ENGLISH,

        Respondents.

CAUSE NO. 3:26-CV-336-CCB-SJF

## OPINION AND ORDER

Immigration detainee Antonio Paigne, by counsel, filed a petition for a writ of

habeas corpus under 28 U.S.C. § 2241, alleging he is being denied due process in

connection with a proposed third country removal to Mexico. ECF 1. The Respondents

have answered the petition, and Paigne has replied. ECF 12, ECF 13. The petition is

ready to be decided.

## I. BACKGROUND

Paigne came to the United States from Cuba in 1980 and was paroled into the

United States as part of the Mariel Boat Lift. Following a criminal conviction, he was

ordered removed by an immigration judge in 1999. ECF 6-1 at 1-2. He could not be

removed to Cuba at that time, so he was released from the custody of Immigration and

Customs Enforcement (ICE). In 2008, he was convicted of state drug and gun charges

and sentenced to incarceration. *Id.* at 11. Following his release from criminal custody,

ICE placed him on an Order of Supervision in 2016.

Paigne was convicted of two state drug charges in 2021. ECF 6-1 at 5-6. Based on these charges, ICE revoked his 2016 Order of Supervision and took him into custody when his criminal sentence ended in March 2026. He was informed at that time that he would be removed to Mexico. *Id.* at 4-6. At the informal interview following the revocation, held on March 6, 2026, the interviewer noted that Paigne expressed concern about removal to Mexico due to no family ties in Mexico. *Id.* at 7. He reported Paigne said he had a wife and ten children in the United States. *Id.*

On March 13, 2026, Paigne, through counsel, requested a reasonable fear interview from immigration officials and also filed this habeas petition. ECF 1-2. The reasonable fear interview took place, with counsel present, on March 25, 2026. ECF 12-1. The asylum officer determined Paigne did not establish that it is more likely than not that he would be persecuted or tortured in Mexico. *Id.* On April 2, 2026, Paigne, through counsel, requested review of the negative fear determination by an immigration judge. ECF 16-1. The request was denied. *Id.* The government represents that, pursuant to ICE's Guidance Regarding Third Country Removals from March 30, 2025, Paigne is not entitled to any further review before he is removed to Mexico. ECF 6-2 at 1-2. Paigne, conversely, argues that due process requires that he be given the opportunity to have an immigration judge review the negative fear determination, as is the process for noncitizens subject to removal in other contexts.

While the habeas petition was being briefed, Paigne filed a motion for a temporary restraining order, which the court construed as a motion for a preliminary injunction and granted after briefing. ECF 14. Respondents were ordered not to remove

Paigne to any country outside the United States other than Cuba while his habeas corpus petition was pending. *Id.*

## II. ANALYSIS

### *A. Law Regarding Third Country Removals*

Because Paigne is subject to a long-since final order of removal, his detention falls under 8 U.S.C. § 1231(a). Section 1231(a) mandates that a noncitizen be detained during a 90-day "removal period,"[1] during which time the government is instructed to carry out the removal. 8 U.S.C. §§ 1231(a)(1), (a)(2). The removal period for Paigne ended around 1999. Beyond the removal period, continued detention under § 1231(a)(6) is authorized for certain noncitizens delineated in § 1231(a)(6) only as long as removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). The Supreme Court has instructed that once removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700. Neither party contests that Paigne's criminal record places him in the group

---

[1] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

of noncitizens whose continued detention is authorized under § 1231(a)(6) if removal is reasonably foreseeable.

Nor does either party contest that third country removals are authorized by statute. The Immigration and Nationality Act (INA) delineates which countries a noncitizen may be removed to, depending on whether the noncitizen is one "who arrives at the United States" or had proceedings initiated at a different time. 8 U.S.C. §§ 1231(b)(1), (b)(2). Paigne falls in the latter category, and therefore he had the option in his removal proceedings of designating the country to which he wanted to be removed (with some exceptions not relevant here). 8 U.S.C. § 1231(b)(2)(A). If the noncitizen cannot be removed there, then the statute directs the noncitizen shall be removed to a country where the noncitizen is a subject, national, or citizen. 8 U.S.C. § 1231(b)(2)(D). If that removal is not possible, the statute lists other possible countries for removal, ending with, "If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E).

All of these potential countries of removal are subject to two limitations. First, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). Second, under the Convention Against Torture (CAT), codified in the Foreign Affairs Reform and Restructuring Act (FARRA), "[i]t

4

shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture . . .." OMNIBUS CONSOLIDATED AND EMERGENCY SUPPLEMENTAL APPROPRIATIONS ACT, 1999, PL 105–277, October 21, 1998, 112 Stat 2681 (FARRA, § 2242(a)) (codified at 8 U.S.C. § 1231 note). Statutory withholding of removal under § 1231(b)(3) is unavailable to some noncitizens, including those who participated in persecution, committed a particularly serious crime, or is deemed a security threat to the United States. 8 U.S.C. § 1231(b)(3)(B). But for the remaining noncitizens, withholding of removal is mandatory if the criteria are met. *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999). Protection under CAT has no exceptions, although noncitizens who are ineligible for statutory withholding of removal who meet the standard for CAT protection, may receive only deferral of removal, rather than withholding of removal under CAT. *See* 8 C.F.R. § 208-16(c)(4). Under both withholding and deferral of removal, a noncitizen cannot be removed to the designated country, but once conditions change that make torture no longer likely, deferral of removal is easier to terminate than withholding. *Compare* 8 C.F.R. § 208.24(f) (termination of withholding of removal), *with*, 8 C.F.R. § 208.17(d) (termination of deferral of removal). All protection under § 1231(b)(3) and CAT, however, is country-specific and does not prevent the government from removing the noncitizen to another country authorized by statute. *See* 8 C.F.R. § 208.16(f); *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021).

5

The process for asserting a claim under § 1231(b)(3) or CAT depends on the type of removal proceedings the noncitizen is in. In full removal proceedings under 8 U.S.C. § 1229a, an immigration judge designates a country of removal, and noncitizens are allowed to assert claims of statutory withholding of removal, CAT protection, and other forms of relief from removal during those proceedings to the extent they are not statutorily barred from that relief. 8 U.S.C. § 1229a(c)(4). It is a "fundamental failure of due process" for an immigration judge to designate as a country of removal a country for which the noncitizen has not had "a full opportunity to present evidence concerning their fears of persecution." *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998). The immigration judge's decision is subject to review by the Board of Immigration Appeals (BIA), and then by a circuit court on a petition for review. 8 C.F.R. § 1240.15 (appeal to the BIA); 8 U.S.C. § 1251(a)(5) (petition for review with court of appeals).

There are other ways a noncitizen might be subject to removal proceedings, outside the full proceedings in § 1229a. A noncitizen might be subject to expedited procedures under 8 U.S.C. § 1225(b)(1)(A)(i) as an arriving alien, under 8 U.S.C. § 1228 based on certain criminal convictions, or under 8 U.S.C. § 1231(a)(5) if a prior removal order is reinstated following an illegal re-entry. The ins and outs of each process is not relevant to this decision. What is relevant is that in all cases, the noncitizen has the ability to assert a claim that he will be persecuted or tortured in the proposed country of removal. *See* 8 U.S.C. § 1225(b)(1)(A)(ii) (arriving aliens); 8 C.F.R. § 208.31 (removals under § 1228 and reinstated removal orders). The process in each case begins when the noncitizen asserts a fear of persecution or torture to the immigration officer processing

his case. Then, the noncitizen is interviewed by an asylum officer to determine whether the noncitizen has a credible or reasonable fear of persecution or torture.[2] *See* 8 U.S.C. §§ 1225(b)(1)(B)(i), (b)(1)(B)(ii); 8 C.F.R. §§ 208.31(b), (c). If the asylum officer determines the noncitizen has a credible or reasonable fear, then the case is referred to an immigration judge for a full hearing. *See* 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.31(e). If the asylum officer makes a negative fear determination, the noncitizen has the right to request that an immigration judge review the negative fear finding. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 208.31(f); *see also Make the Rd. New York* v. *Mullin*, -- F.4th --, No. 25-5320, 2026 WL 1792978, at *17 (D.C. Cir. June 23, 2026) ("When initial decisions are made by agency officers but subject to de novo review by neutral adjudicators, due process is satisfied. . . Congress assigned credible-fear interviews [in expedited removal proceedings under § 1225(b)(1)] to asylum officers, and de novo review of negative determinations to immigration judges. The availability of immigration-judge review provides the neutral check needed to satisfy due process.") (citations omitted).

In Paigne's situation, where his removal proceedings are long over but his removal to Cuba cannot be carried out, the government has the authority to select a third country for his removal. But, at the same time, he cannot be removed to a country

---

[2] A credible fear is an easier standard to meet than a reasonable fear, requiring only a "significant possibility" of persecution, as opposed to a "reasonable possibility." 8 U.S.C. § 1225(b)(1)(B)(v) ("significant possibility"); 8 C.F.R. § 208.31(c) ("reasonable possibility"). The different standards apply based on the type of relief the noncitizen is eligible for.

where he will face persecution or torture.[3] The government asserts Paigne's rights are

protected by the Guidance Regarding Third Country Removals, issued March 30, 2025,

which states that if a noncitizen affirmatively states a fear of removal to the country

designated for removal, an immigration officer will refer the noncitizen to United States

Citizenship and Immigration Services (USCIS) for a screening. ECF 6-2 at 2. If USCIS

determines the noncitizen has demonstrated that it is more likely than not that he

would be persecuted on a statutorily protected ground or tortured in the country of

removal, then ICE has the option to designate another country for removal or to

proceed as planned. *Id.* If ICE decides to proceed with that country, the case is referred

to an immigration judge for proceedings limited to determining the noncitizen's

eligibility for protection. *Id.* If, however, the USCIS screening results in a finding that

the alien did not meet his burden, the noncitizen will be removed without further

review.[4] *Id.* Paigne asserts that due process requires that he be allowed to seek review of

his negative fear determination before an immigration judge.

*B. Subject Matter Jurisdiction*

Respondents first argue that 8 U.S.C. § 1252(g) deprives this court of jurisdiction

over this case. The provision states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising*

---

[3] Neither party states whether Paigne's criminal convictions make him ineligible for withholding of removal, so the court assumes he is eligible, though nothing turns on this distinction.

[4] The Guidance also asserts the right to remove a noncitizen based on diplomatic assurances from the proposed country of removal that no persecution or torture will happen, but that is not at issue in this case.

> *from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Respondents argue Mr. Paigne's petition "aris[es] from the decision or action by the Attorney General to . . . execute removal orders" against him, and therefore this court must dismiss this case for lack of jurisdiction under § 1252(g).

The Supreme Court has construed the jurisdictional limitations in § 1252(g) narrowly. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders[,]'" and not the "many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

In determining whether a petition "arises from" one of the prohibited actions, the Seventh Circuit analogizes the inquiry to federal question jurisdiction under 28 U.S.C. § 1331, which gives district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Fornalik v. Perryman*, 223 F.3d 523, 531 (7th Cir. 2000) (quoting 28 U.S.C. § 1331). Thus, the Seventh Circuit instructs courts to look to whether "the alien's well-pleaded complaint is based on one of § 1252(g)'s three listed factors." *Id.*

9

In applying this test, the Seventh Circuit has held that courts do not have jurisdiction over a habeas petition seeking a stay of deportation pending resolution of an appeal to the BIA of the denial of a motion to reopen because that petition challenged the decision to execute the petitioner's deportation. *See Fedorca v. Perryman*, 197 F.3d 236, 240 (7th Cir. 1999); *see also E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) (concluding § 1252(g) barred challenge to the Department of Homeland Security's decision to execute her removal order while petitioner sought administrative relief); *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787–88 (7th Cir. 2002) (concluding § 1252(g) stripped district court of jurisdiction over request for stay of removal pending administrative reconsideration or a decision under new legislation because the request "arises from" the Attorney General's decision to execute a removal order); *Chowdhury v. Ashcroft*, 241 F.3d 848, 851 (7th Cir. 2001) (concluding habeas petitioner's request "to stay the execution of his deportation order, pending a Board decision on his motion to reopen" was a challenge to the execution of a removal order and foreclosed by § 1252(g)). Similarly, § 1252(g) bars a litigant "from obtaining an order commanding the [Department of Homeland Security] to adjust his status or precluding his removal." *Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002). There is also no jurisdiction under § 1252(g) to order the Department of Homeland Security to "recommence deportation proceedings for the purpose of adjudicating [an] application for discretionary relief" because the decision to cease proceedings and not adjudicate the application for discretionary relief arises from the discretionary decision to commence proceedings. *Wigglesworth v. I.N.S.*, 319 F.3d 951, 961 (7th Cir. 2003). These cases

10

establish that § 1252(g) prevents this court from interfering with a removal in order to allow administrative or other processes that might afford relief to be completed.

On the other side, § 1252(g) does not bar a claim concerning whether detention is appropriate while the administrative process is ongoing because detention status may be resolved "without affecting pending proceedings." *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999). In *Parra*, the Seventh Circuit held § 1252(g) did not block a habeas petition challenging the validity of 8 U.S.C. § 1226(c), the statute under which the petitioner was held. And § 1252(g) does not block review of an error unrelated to the removal proceedings that incidentally makes removal improper. *Fornalik v. Perryman*, 223 F.3d 523, 532 (7th Cir. 2000) ("His claim is not that the Attorney General is unfairly executing a removal order, but rather that a prior, unrelated error makes his removal improper.").

In this case, Paigne is not asking the court to stay his removal while administrative processes are completed. Instead, like in *Fornalik*, he is claiming that the administrative process that might afford him relief is constitutionally infirm, which incidentally may make his removal to that specific country improper, but does not challenge the government's right to remove him. He is not asking this court to question whether Mexico is an appropriate choice for removal or to re-examine the USCIS official's findings about the likelihood of persecution or torture. Instead, he is questioning whether the process used to determine whether he would face persecution or torture in Mexico comports with due process. That is a separate issue from the decision to execute his removal order and therefore is not barred by § 1252(g). *Accord*

11

*Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025) (concluding legal question about what process petitioner was due before removal to third country was separate from ICE's discretionary authority to decide "when" or "whether" to execute a removal order, and therefore not precluded under § 1252(g)).

### C. Habeas Jurisdiction

Although this court has subject matter jurisdiction over the claim, the next question to consider is whether a habeas petition is the proper vehicle to bring a challenge to the procedures used to determine whether a noncitizen has a reasonable fear of being removed to a third country that would trigger application of § 1231(b)(3) or CAT protection.

Habeas petitions are used to attack the lawfulness of custody. *See Munaf v. Geren*, 553 U.S. 674, 693–94 (2008) ("Habeas is at its core a remedy for unlawful executive detention."). The Seventh Circuit has strictly delineated the difference between claims that attack the fact or duration of confinement, which are appropriate for a habeas petition, and claims that challenge the procedures used to determine the length of confinement, which are not. When deciding whether a claim is cognizable in habeas, Seventh Circuit precedent instructs courts to consider whether "victory in this litigation" would entitle the petitioner "to any change in the duration or even the location of his confinement." *Richmond v. Scibana*, 387 F.3d 602, 605 (7th Cir. 2004). The Seventh Circuit explained, "Parole litigation supplies a helpful analogy: a prisoner claiming a right to *release* on parole must use § 2241 (or § 2254 for a state prisoner); but a prisoner claiming that parole officials are apt to use incorrect rules when resolving a

12

future application must use the [Administrative Procedures Act] (or 42 U.S.C. § 1983 for a state prisoner)." *Id.*

Under this precedent, habeas is not the right vehicle to determine what process Paigne is entitled to before removal to a third country; if the court were to find that Paigne is entitled to more process before being removed to a third country, that finding wouldn't necessarily entitle him to release while the process is completed. *Cf. Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024) (concluding multi-year detention under § 1231(a) during withholding-only proceedings was lawful because "the withholding-only proceedings *end.* And if the withholding-only proceedings have a definite ending point, then so too must the detention *pending* the resolution of those proceedings."); *G.P. v. Garland*, 103 F.4th 898, 902 (1st Cir. 2024) (same); *Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (same). Because a victory in the litigation would not necessarily affect the duration of Paigne's custody, habeas would not be the right avenue for relief. *Cf. Cedeno-Gonzalez v. Noem*, No. 2:25-CV-00473-JPH-MJD, 2025 WL 2999583, at *9 (S.D. Ind. Oct. 27, 2025) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117–18 (2020)) ("Mr. Cedeno-Gonzalez does not refute the government's argument that to the extent he claims he is entitled to procedural protections before being removed to a third county, that relief exceeds the scope of relief available in a habeas proceeding because it challenges his removal rather than the legality of his detention.").

Paigne was explicitly directed to address whether this issue is cognizable in habeas, and he cites to *Trump v. J.G.G*, 604 U.S. 670, 671 (2025), and *A.A.R.P. v. Trump*,

605 U.S. 91, 92 (2025), to support his argument that habeas is appropriate. [5] Neither are

persuasive.

First, in *J.G.G.*, the Supreme Court held that detainees and a putative class had to

proceed in habeas, not under the Administrative Procedures Act (APA), to challenge

the implementation of, and their removal under, the Alien Enemies Act (AEA), 50

U.S.C. § 21, as purported members of the gang Tren de Aragua. 604 U.S. at 671. The

AEA authorizes the President to apprehend, restrain, secure, and remove all citizens or

subjects ages fourteen or older of a foreign nation who is at war with the United States

or invading or attempting to invade the United States. 50 U.S.C. § 21. The President had

issued a Proclamation invoking the AEA to detain and remove Venezuelan nations who

are members of Tren de Aragua. *J.G.G.*, 604 U.S. at 671. The detainees "challenge[d] the

Government's interpretation of the Act and assert[ed] that they do not fall within the

category of removable alien enemies." *Id.* at 672. On an emergency application for relief,

the Supreme Court held the claims had to be brought in habeas:

> Challenges to removal under the AEA, a statute which largely precludes judicial review, must be brought in habeas. Regardless of whether the detainees formally request release from confinement, because their claims for relief necessarily imply the invalidity of their confinement and removal under the AEA, their claims fall within the "core" of the writ of habeas corpus and thus must be brought in habeas. And immediate physical release is not the only remedy under the federal writ of habeas corpus.

*Id.* (cleaned up). *J.G.G.* does not change the habeas/APA distinction laid out in

*Richmond* because *J.G.G.* was a direct challenge to the statute authorizing the detainees'

---

[5] Although both of these orders were emergency orders, decided without the benefit of full briefing and argument, the court notes that even emergency orders from the Supreme Court "constitute[ ] a precedent that commands respect," *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 606 U.S. ----, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring in part and dissenting in part).

confinement. Here, Paigne is being detained under 8 U.S.C. § 1231(a)(6). The inquiry in a challenge to detention under 1231(a)(6) is whether removal is reasonably foreseeable, *see Zadvydas*, 533 U.S. at 701, and that inquiry does not extend to considerations regarding whether a particular country was properly chosen for removal.

In *A.A.R.P.*, a case decided after *J.G.G.*, two purported members of Tren de Aragua and a putative class filed a habeas petition seeking injunctive relief against summary removal under the AEA. *See* 605 U.S. at 92. On another application for emergency relief, the Supreme Court reiterated that "[t]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings" and concluded the process given the AEA detainees about their removals did not comport with due process. *See id.* at 94. The case was remanded to the Fifth Circuit "to determine in the first instance the precise process necessary to satisfy the Constitution in this case." *Id.* at 95.

This case would appear to blur the distinction between process and release articulated by the Seventh Circuit in *Richmond* because the Supreme Court instructed the lower courts to determine what process is due to the purported Tren de Aragua members before they are removed. However, the AEA context is different from the immigration proceedings under the INA at issue here. The government relied on the same statute, 50 U.S.C. § 21, for the authority to apprehend, detain, and remove people deemed alien enemies. Whereas in the context of removal under the INA, there are different provisions governing the apprehension, 8 U.S.C. §§ 1226(a), 1357(a), detention, 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV), (b)(2)(A); 1226(a)(1), (c); 1231(a), and removal, 8 U.S.C.

15

§ 1231(b), for noncitizens subject to removal for reasons other than being designated an alien enemy. There is a complex statutory and regulatory scheme governing removal proceedings under the INA, while the AEA is silent as to what procedures must be followed for the apprehension, detention, and removal of people designated as alien enemies.[6] The Supreme Court's instruction to determine what process is due to designated alien enemies before they are removed is in the context of one, single statute authorizing the apprehension, detention, and removal of a person based on the sole reason of being deemed an alien enemy. If that alien enemy designation were incorrect, that finding would necessarily imply the invalidity of the detention, even if detention wasn't directly challenged. *A.A.R.P.* does not provide a basis for this court to disregard the Seventh Circuit's instructions in *Richmond.*

---

[6] A Texas district court addressed the relationship between the INA and the AEA and concluded:

> Under the AEA, a president retains the authority to designate individuals as "alien enemies" and establish a basis for removability pursuant to the criteria set forth within a properly enacted proclamation invoking the AEA. Once designated, an individual will be entitled to a thirty-day notice and opportunity to file a habeas petition to challenge the lawfulness of their detention and their designation as alien enemies.

> If an AEA designee has been previously admitted into the United States, Respondents *must* follow removal procedures pursuant to the plain language of Section 1229a of the INA to determine whether such individual may be removed. While in removal proceedings under Title 8, these AEA designees will have access to apply to all relief protections afforded under Title 8 and applicable regulations.

> If an AEA designee has *not* been previously admitted, Respondents retain the discretion as to the precise procedures to follow, but must, as a matter of law, afford a designee the opportunity to apply for asylum, withholding of removal, or CAT relief, and have their claims adjudicated in accordance with existing law. In sum, this framework in no way prohibits Respondents from removing individuals under independent provisions of Title 8.

*M.A.P.S. v. Garite*, 786 F. Supp. 3d 1026, 1060–61 (W.D. Tex. 2025).

The court acknowledges that other district courts sitting in habeas have granted petitioners the relief that Paigne seeks here. *See, e.g.*, *Sagastizado v. Noem*, 802 F. Supp. 3d 992 (S.D. Tex. 2025); *Cruz Medina v. Noem*, 806 F. Supp. 3d 536 (D. Md. 2025), *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019). However, no district court within the Seventh Circuit has done so. This court cannot disregard Seventh Circuit precedent that compels a finding that this issue is not cognizable in habeas. Whether a particular country has been designated for removal in accordance with due process is not a question that may be answered in habeas, where the relevant legal inquiry is whether removal is reasonably foreseeable, not whether that removal is proper.

Paigne argues, nevertheless, that this must be heard in habeas because this issue arose outside traditional removal proceedings under 8 U.S.C. § 1229a, and he cannot otherwise seek judicial review at the circuit on a petition for review. He says there are no other routes for him to raise this challenge. But that is not necessarily true. The Seventh Circuit has held open a "safety valve" to allow direct review in the court of appeals "for aliens wishing to challenge their deportation on constitutional grounds. Thus, 'judicial review is curtailed as Congress intended, but enough of a safety valve is left to enable judicial correction of bizarre miscarriages of justice.'" *Singh v. Reno*, 182 F.3d 504, 509 (7th Cir. 1999) (quoting *LaGuerre v. Reno*, 164 F.3d 1035, 1040 (7th Cir. 1998)); *see Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002) ("Although the 1996 Amendments generally foreclosed judicial review of deportation orders by way of habeas corpus in the district court, in certain cases aliens may petition the court of appeals directly for review of INS removal determinations.") (citing *LaGuerre*, 164 F.3d

at 1038-40). Further, the Seventh Circuit recently suggested that a noncitizen might be able to claim equitable tolling and file a late petition for review in the case of, among other things, the government "[d]esignating removal to a third country over thirty days after a final order of removal because the noncitizen obtained withholding-only relief as to his home country, but doing so without notice and without informing him of the right to undergo another reasonable-fear interview." *E.E.V. v. Blanche*, -- F.4th --, No. 25-2256, 2026 WL 1948859, at \*15 (7th Cir. July 6, 2026). Alternatively, this same issue has been brought elsewhere as a civil action under the APA and other theories besides habeas. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 126 (D. Mass. 2026), *appeal filed* No. 26-1212 (1st Cir. filed Feb. 28, 2026). In mentioning these options, the court is not determining that either are appropriate routes to obtain review. Rather, it shows that there are options other than habeas to raise this claim.

### III. MOTION TO AMEND

Finally, Paigne filed a motion to amend, seeking to add in an additional claim under *Zadvydas*, arguing that since he first filed his habeas petition, his claim for prolonged detention under *Zadvydas* has ripened. At this stage of the proceedings, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). When justice requires it, leave should be freely given. *Id.* "Reasons for finding that leave should not be granted include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party

by virtue of allowance of the amendment, [and] futility of amendment." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007).

Here, it would be futile to allow this amendment. Paigne argues his removal is not reasonably foreseeable because respondents have taken no steps to remove him to Cuba since his re-detention in March 2026. Under *Zadvydas*, after a presumptively reasonable period of detention has passed, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Paigne has not met his initial burden under *Zadvydas*. He has provided good reason to believe he cannot be removed to Cuba in the foreseeable future but is silent as to whether his removal as to another country is reasonably foreseeable. The court, therefore, will deny the motion as futile. However, the court observes that "for detention to remain reasonable, as the period of prior postremoval [order] confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Id.* While Paigne may not be entitled to habeas relief now, it does not prevent him from seeking habeas relief at some later date if the government continues to detain him for a significant period of time.

For these reasons, the court:

(1) **DENIES** the motion to amend (ECF 21);

(2) **VACATES** the preliminary injunction order (ECF 14) but **STAYS** this vacatur through **July 31, 2026**, to allow Paigne a reasonable opportunity to seek appellate review and to preserve and protect the jurisdiction of the United States Court of

Appeals for the Seventh Circuit should Paigne seek appellate review during this period; and during the stay, the Government shall not remove Petitioner from the United States to any country other than Cuba;

(3) **DENIES** the petition (ECF 1); and

(4) **DIRECTS** the clerk to close this case.

SO ORDERED on July 16, 2026.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT